May it please the Court, Noreen Farrell on behalf of Appellants. I'd like to reserve five minutes of time for rebuttal. Yes, but please keep track of your own time because that's your total. I will do that. Thank you. Plaintiffs brought this case to challenge the failure of the University of California to provide its female students with an equal opportunity to play sports, which is an affirmative duty under Title IX. At issue in this appeal are three of the district court orders that reflect a fundamental misunderstanding about the Title IX framework that applies in athletics cases. If not reversed on appeal, it will upend decades of Title IX jurisprudence and it will impose insurmountable barriers to students trying to enforce their civil rights in our courts. First, we challenge the district court's dismissal of plaintiff's Title IX claim on summary judgment. The district court not only erroneously resolved disputed facts in the university's favor, it imposed a notice requirement that radically departs from the way 11 circuit courts of appeal, including this one, have decided athletics cases. Rather than proceed directly to the three-part test promulgated by the Office of Civil Rights and adopted by every circuit considering it, the district court followed an outlier eighth circuit case, relying on the actual notice test set forth by the Supreme Court in the sexual harassment case of Gefzer v. Laga Vista. The actual notice standard does not apply in athletics cases. Gefzer's concern that a school could be held liable not for its own acts, but for those of a rogue third party, is not present here. Athletics cases necessarily involve the institution's own decisions about how to allocate a certain quality and quantity of participation opportunities and benefits. Neither a school nor a court can decide whether or not the elimination of a team is unlawful without looking at how the institution runs its entire athletics program. Plaintiffs here don't challenge third party acts, but rather the university's own decision not to provide its female students with an equal opportunity to play. The actual notice standard imposed here would directly conflict with an institution's affirmative obligations under Title IX to know whether or not they're accommodating women, to monitor its compliance, to report its number of participation opportunities, and to remedy inequities affirmatively. A school may not just sit back and wait for a complaint under Title IX. Let's suppose we agreed with you. There was also a motion for summary judgment, as I recall, on the merits. Would we go on to those issues or would we remand them? What would we do? We believe the record before the Court would allow the Court to make a ruling on the summary judgment. The only issue for the Court that the Court should have decided was whether or not the plaintiffs had raised an issue of fact with respect to the three-part test. The university has admitted it does not comply with prongs one and three, in that it doesn't provide substantial proportionate opportunities to women, which are the underrepresented sex in this case, and that it doesn't meet all the interests of women on its campus in athletics. So the only issue is whether or not plaintiffs raised an issue of fact with respect to prong two. Did the university have a history and continuing practice of expanding opportunities for women that was responsive to their interests? We believe the record before the Court more than satisfies that burden on summary judgment. Getting back to the notice issue, even if the Court accepts that the plaintiffs were required to provide the university some form of notice, there can be no question that the University of California had notice of plaintiffs' complaints and that it was not effectively accommodating women before this lawsuit was filed. We've submitted in the record evidence of plaintiffs' OCR complaints and that university officials understood that these implicated a program-wide grievance. But the district court found that this actual notice was insufficient, taking every inference against the plaintiff on a summary judgment motion. It went beyond what Gebser even contemplated to require a formal complaint with the magic words, program-wide. This is not and cannot be the standard, because fundamentally a complaint over the elimination of an athletic opportunity necessarily requires a review of the school's entire athletic program. The Court should not allow the university to use the program-wide issue as a sword, as a shield in the notice context, but then as a shield, a sword in this case, in that it says it was not in violation of Title IX in eliminating wrestling because it otherwise complied with Title IX overall. So we ask that the Court find that the actual notice standard does not apply to athletics cases and that plaintiffs have also met their burden on summary judgment with respect to the three-part test. The other district court order at issue in this appeal is the district court's dismissal of plaintiffs' equal protection claim on a motion for judgment on the pleadings. We submit the claim must be reinstated pursuant to Fitzgerald v. Barnstable, decided earlier this year by the Supreme Court, which held that a Title IX claim is distinct from an equal protection claim and that a plaintiff may simultaneously pursue both. Kagan. What about the order denying injunctive relief on Title IX? You're not going to talk about that? Excuse me? You're not going to talk about the order denying injunctive relief under Title IX because the plaintiffs, because he wouldn't allow the amendment to the complaint? Yes. It's our position that that claim should be reinstated as well because the Court erred in not allowing plaintiffs to add. You don't want to talk about that? I do. Would you like me to address that now? Why don't you go on? We'll talk. Okay. Make sure you do address it. I will. I will, Your Honor. The university has raised a timeless issue with respect to the equal protection claim, and the district court has ruled on that in the motion to dismiss, and the university has not shown why that's an error. The university has also raised the defense to the equal protection claim that the individual officials are entitled to qualified immunity. Again, that's being raised on appeal for the first time. We believe that the Court can pass on resolving that issue and remand that to the district court. Now, with respect to the third district court order, and that was refusing plaintiffs' leave to amend to add current students to the plaintiff, plaintiffs established both good cause for the amendment and that it would not prejudice the defendants. The need for the amendment arose out of a really highly unusual circumstance in that right before the motion for class certification was to be heard, there was a stay imposed to accommodate the serious illness of plaintiffs' counsel. During that stay, the last plaintiff who was a current student graduated. So as soon as the stay was lifted, plaintiffs' counsel sought to amend to add current students to strengthen representation of the class. It would have not prejudiced the university because adding students from a variety of different sports was consistent with the complaints. But isn't the real problem this? That because of the delay caused by the illness of the lawyer, the class action certification was about to come on, almost instantaneously at the time that the stay was issued. That's right. And had it come on and had the class been certified at that point, then the fact that the remaining main plaintiff graduated later wouldn't have mattered. That's correct, Your Honor. Under our case law, including Bates, which I don't think you ever cited. And so because of the delay, though, a problem developed because there was nobody left who hadn't graduated. That's correct, Your Honor. So the necessity was tied to essentially the law about class action, about there was a difference before and after in terms of whether there was a need for another main plaintiff. Well, I think that there are different views in terms of when the status of a class representative controls for the purposes of class certification, whether or not it's when the class certification motion is filed. It's absolutely clear. The law is quite clear about that, including starting from Sosa v. Iowa and so on. It's the certification that matters. And that was our point, that because of the stay, there was a graduation, and that necessitated the stay. And we obviously sought it diligently as soon as the stay was lifted. I think the focus of the Court's decision was that we asked to add students from a variety who had different interests. We did ask to include a plaintiff who was a current student who was a wrestler. We also asked to add two other plaintiffs who had different interests. And I think, again, this order reflects the Court's misunderstanding of Title IX and effective accommodation claim. It necessarily implicates a program-wide view. There had been program-wide discovery taken in this case. And, indeed, both experts relied on a program-wide perspective in offering opinions about the effective accommodation claim. And there were – there was eight more months left in discovery, which was sufficient time to depose these several new plaintiffs. So in our view, the district court did abuse its discretion in not allowing the amendment. What difference does that make in the sense that I gather that these same people have gone off and filed a different lawsuit. Is that right? That's correct, Your Honor. Couldn't that just be consolidated with this one and solve the problem? There is a difference. There has been a separate lawsuit filed on behalf of current students, but the injunctive relief sought by these particular plaintiffs may look different. Obviously, this is something that we would have to work out once the claim was remanded or once this issue was remanded to the district court. We believe it important to find that the court made an error of law in not allowing the amendment, but these particular plaintiffs perhaps would want to seek the reinstatement of a wrestling team, specific relief that wasn't at issue and wasn't dealt with in the other lawsuit. I'm confused. These plaintiffs who are now in this case who have a live claim are the same people who filed the other case, no? Oh, no. Oh, they're different people. No, they're different. Oh, I'm sorry. I thought there was something in the briefs that said it was the same people. No, it's not the same people. I see. But they're different sports. So the named plaintiffs, the original named plaintiffs in this case, and there is some confusion and I'd be happy to clear it up, the original named plaintiffs in the case were members of the wrestling team. They were members of the wrestling team. We had sought an amendment to add an additional wrestler who was a current student and another student who was interested in rugby and another student who was interested in field hockey. Those students, you know, had different interests. The Brost case, which is the case on behalf of a current student, has been resolved by settlement. There was some injunctive relief. It has been or it has not? It has been. Okay. There was some injunctive relief, but we believe the injunctive relief sought in this case will look different, particularly because some of the relief that has been sought in this case is the reinstatement of the wrestling team. Well, your complaint, although you had an individual who happened to be involved in wrestling, your complaint in terms of the prayer for relief was stated in more general terms, right? Yes. And is there any question that, for example, a woman who was involved in the wrestling team would have standing in terms of being a typical class representative for the totality of relief, given the nature of the claim? Courts have looked at this, and in thinking about injunctive relief, the university is entitled to comply with Title IX in any way it sees fit in terms of what sports it adds. But when a particular case is brought by particular class representatives, and I believe this was referenced in the Roberts v. Colorado case, that it is appropriate for those particular plaintiffs to seek the injunctive relief that they're seeking, the reinstatement of their particular team. Because this was not framed as an equal protection claim as such, right? Well, that was part of it. It was the effective accommodation idea. Well, there are two different claims. One is effective accommodation, and the other is equal protection. And both have both — But yours was not, as I understand it, you've made it clear, not an equal protection claim as such. An equal treatment claim under Title IX. Under Title IX, you keep saying that you are not suing under the equal treatment prong of Title IX. Yes. Okay. Equal treatment. That's true. We're not seeking it. I thought you said our equal protection claim. No. No. Yeah. We're not seeking — our theory is not based on an equal treatment claim. And the class that you represent is — want to represent is? A class of all female students who are interested in participating in interscholastic athletics, inclusive of these named plaintiffs who are wrestlers. Are the current plaintiffs about to graduate, so we're going to end up with the same problem again? Well, we would — The current proposed plaintiffs. They have graduated. We would have to — we would have to seek the amendment of get different plaintiffs. I mean, this is what happens in these cases, right? Students graduate. So — So the particular people don't even matter. We shouldn't even be worrying about them. That's true, Your Honor. It doesn't matter. What is important is a student who wants to have an opportunity to participate in sports, regardless of their particular interest in a sport. Obviously, every student is going to have their own interests, but what we're seeking is current students who can represent a class of women that are interested in participating at the varsity level. I mean, don't we just have to — and if they've graduated, then the question of whether they can be amended in is a moot question. So don't we forget about all that? Well, what we'd like the Court to do is to find that the district court abuses discretion in not allowing us to amend the complaint to add current students, without being specific about which particular ones are at issue, because the nature of these appeals, time passes and people graduate. So I think that that's the practical reality. You want class certification to get into the SOSNA against Iowa and public, whatever it is, against Garrity kind of case, right? I mean, I think that — I think this is the issue of students graduating. You know, we need to have a broad enough order that accompanies — you know, takes that into account. I'd like to reserve the remainder of my time, unless you have any other questions. Thanks. I don't appear to be any. Thank you. Police, the Court, Nancy Sheehan, representing the University of California and the individuals who were sued in this action. I'd like to start by addressing the issue that I think might be the trigger for all of the other issues, which is whether the district court abused its discretion in denying the motion to amend the complaint to expand the — That's not the trigger, because there's still a damages case pending, right? There's still a damages case pending on behalf of the — Yes, for the individuals. A nonclass action solely monetary damages. But if I may, I will start with that issue on this. Okay. And I believe that if you look at the timing of things that occurred in this case, you'll see that the district court did not abuse its discretion in denying that motion. This lawsuit was filed in December of 2003. It's filed as a class action. Rule 23 states that a motion for certification of a class should be made as soon as practical. The motion for certification in this class, to have the class certified as pled in the initial complaint, and that was a class that was defined with the words, women who want to wrestle, that motion was not filed for two years. It was filed in December of 2005. It was originally set for hearing a little bit earlier, and then it was moved by stipulation several times. The hearing was set for April of 2006. There was a stay put on the case at that time because of illness on the part of the plaintiff's counsel. I cannot fault counsel with that. I went through a very difficult time that year also with cancer, and I had to get some accommodation for the time that I needed. However, the motion for stay was put in place literally on the day that the reply to our opposition to the motion for class certification was put into — was due to be put into court. I'm not saying that the stay was requested for that, but if we look backwards on the information that was available to the plaintiffs before they filed their class certification motion, you'll see that the problem of lack of standing for their plaintiff class representatives was more than clear even before the motion was put in place. But it wasn't given the law. That's the part that's not acknowledged in the briefs or in the district judge's opinion, because had the class been certified in April of whatever year that was. What year was it? 2006. 2006. As I understand it, the fact that the last-name plaintiff who was a student graduated in June would not have affected the viability of the class action as long as there was some other member of the class, and that's our Bates opinion and a bunch of earlier cases. So that's the difference, and that's what he didn't recognize. That is the law. The issue that I do not believe is adequately addressed by the plaintiffs in this case is why, knowing that by the time they filed suit, Nancy Chang had not been at UC Davis for several years. She last attended school in 2000. Christine Ng had graduated in 2002. There was somebody there, was there not, in the at the time of that last stay? There were. Somebody in place. Right. Lauren Mancuso was still there. Okay. And the question at that point is, was the issue of certification really teed up and ready for presentation and determination by the Court at that point, but for the stay? It was teed up and it was ready, but the court, the district court's ruling in denying the motion to amend was that the plaintiffs had had two or three years earlier than that. But he did not recognize this problem, this fact at all. He did not recognize at all that the problem would have been solved had the class been certified in April of 2006. That's why he thought that it was all spinach, so to speak. That is, that they had to have known they had a problem anyway, but they didn't because they could easily have said, well, we're going to solve this problem because we're going to get the class certified before she graduates. And then they didn't. The district court, I agree, looked. But he did look at that. He didn't consider that. I mean, in determining whether he abused his discretion, we need to consider was there something significant he didn't consider. And this seems significant and he didn't consider it. I agree that that was not addressed in the district court's opinion, but there is another very significant point that the district court did address. And that is the proposed amended complaint sought to very significantly expand the scope of the lawsuit. It sought to add the issues of field hockey and rugby to the suit. There's absolutely no mention of any sport but wrestling in the original complaint. But the prayer for relief, as I questioned opposing counsel, did speak in more generic terms, did it not? It asked about all athletic activity, didn't it? It spoke in that term, Your Honor. But if we look at the totality of the complaint, the word comes up over and over and over again is wrestling, wrestling, wrestling. The class they sought to have certified were women who were interested in wrestling. I thought that wasn't a class. I thought it was a broader class, parens, including people interested in wrestling. The class that was identified in the complaint. But the class that they asked to have certified. Right. In the motion for class certification, that was already pending well before the stay and well before this woman graduated. It was broader than that. It was definitely different than what was pled in the complaint, which was one of the grounds that we raised in the objection to the motion for class certification, and that we had a right. We went through this case, including spending a significant amount of time putting together a motion for summary judgment. I started on the motion for summary judgment the latter part of 2005. We didn't have a class certification motion. I had to move forward. I spent a lot of time working on it. The university spent a lot of money on the motion for summary judgment. And then all of a sudden we have a change in the focus of this lawsuit just from wrestling. All the witnesses had to do with wrestling. All the experts had to do with wrestling. Tell me exactly why you care so much about this. I mean, first of all, we now know that the people who they tried to amend in, they're not going to be able to amend in. So presumably some other people are going to show up. Those people can either get amended in now or they can file their own lawsuit, which presumably would be related to this, and it would all come out the same way. Why do you care? Well, I suppose the care factor was greater at the time before the proposed three new plaintiffs, we'll call those the brust plaintiffs, hadn't filed their suit. In the interim, since all this occurred, not only have the brust plaintiffs, the field hockey and the rugby plaintiffs, filed their own suit, it's been resolved. But they're not the same three. They're not the same three. But they're rugby and field hockey plaintiffs. They were two field hockey plaintiffs and a combination rugby wrestling plaintiff. Okay. Okay. That case settled, and literally yesterday we were just working the same group, since it's the same team on both, working on putting the final and finishing touches on the documents to be submitted. And if there's something else that the new people who would want to come in after this want, then they're going to go file their own suit. So it's kind of seems like in a way both sides are spinning wheels about this, because if anybody has a problem, they will file their own suit. It will end up presumably related back to the same judge, and we'll all be in the same place. That could very well be what happens at the end of this. May I address the issue of the grandson and the issue of the notice on this, if that is of interest to this Court? There is a very small body of case law on Title IX jurisprudence. Now, whether that is because all universities just surrender at the very thought of a Title IX lawsuit or it just doesn't get up to the circuit court level, I don't know. But there's a very small body on that. And on the issue of notice, Giebser notice, there really is only one opinion, and that is the grandson opinion of the Eighth Circuit. If we look at Title IX, the express language of the statute contemplates notice to the school of a specific claim. Can the Supreme Court say in Jackson that you don't need notice in that instance for that kind of a case? In Fitzgerald v. Barnes-Stable, there is a sentence right in the middle of the opinion that says Title IX does not have any administrative exhaustion or notice requirement. But the other thing is that in Jackson, which was a retaliation case, they specifically said you didn't need, that the Giebser rule doesn't apply to the retaliation because it's intentional discrimination. I don't believe. I believe in Jackson, the Supreme Court said Title IX's enforcement scheme also depends on individual reporting because individuals and agencies may not bring suit under the statute unless the recipient has received, quote, actual notice, close quote, of discrimination. So that was Jackson v. Birmingham, which is a retaliation case, not a sexual harassment case, not a case where you have some type of rogue teacher. But it says, We emphasize that this limitation on private damages is not a barred liability where a funding recipient intentionally violates the statute. See also, quoting Davis, the Pennhurst notice problem does not arise in a case such as this in which intentional discrimination is alleged. And the whole theory is based on a Pennhurst notice problem. So my reading of Jackson and of Davis and of Fitzgerald is that Giebser is about instances in which the institution itself wasn't the actor and the discrimination is in not dealing with it. If that's the conclusion that's reached, it just renders the Title IX regulations completely without meaning. I'm not reaching it. I'm reading the Supreme Court's cases. But it's still we have to go back to congressional intent. Congress gave the Department of Health, Education and Welfare the job of coming up with regulations to enforce Title IX. Those are in 34 CFR 100.6 et sec. And we read through those regulations to clearly contemplate notice to the institution and an opportunity for the institution to respond to it, and if a cure is necessary, cure. I mean, a perfect example in this case, the plaintiffs, Plaintiff Ng, did file a complaint with the OCR. It was only about wrestling. It was only about her specific experiences with the wrestling team. But the process worked the way that the Department of Education and Congress envisioned it to work, which was notice was given to the school. Immediately, the vice chancellor met with those involved. OCR came to campus and they came up with a plan that was designed to help stop the confusion that had been created, quite frankly, by the former wrestling coach. The women in issue never had to try out for this team. They just became part of it. And it developed in them a sense of expectation that they would have a spot on this team year after year, because that's what one coach allowed before there was any type of limit on the number of people who could be on the wrestling team. Well, when a new coach came along and, consistent with OCR's voluntary resolution plan, said, anyone who was not recruited and wants to try out for the team needs to try out. That's an inherent part of college athletics. And the plaintiffs in this case said, we don't want to do that. We shouldn't have to do it. We didn't have to do it before. That's what spurned this lawsuit. My point here is that the notice that was given, and it's not something that has to be very formal. No one's expecting college students or high school students or even grade school students to be lawyers and understand the difference between ineffective accommodation and disparate treatment. But similar to this Court's opinion in Janowitz v. L'Oreal, which was a Title VII retaliation case. So there's no magic words, but you have to at least get the point across. And the OCR complaints that were filed by the plaintiffs in this case just looked at nothing other than their experience with the wrestling team. There was certainly nothing to indicate to the campus that they were later going to attack the entire program, because that wasn't their interest. So to address one final issue raised by the Court with appellants, and that is we spent a lot of effort and time in the motion for summary judgment addressing what we call the merits of it. And Judge Damrell chose to decide the motion on the narrowest ground possible, which is his right to do. But if this Court is inclined to overturn any of his rulings, I would ask that the matter be remanded to the District Court so that the District Court may address the issue of whether or not the campus was in compliance with Title IX in the first instance. Thank you. Thank you. We just wanted to direct the Court's attention to our brief at 26 through 27, which sets forth all of the allegations of the complaint that include this program-wide scope of the original complaint. We did want to stress that we believe remand is important with respect to the amendment order, because it does matter, because our clients would not be entitled to injunctive relief without that amendment. But your clients, you don't have any clients right now entitled to injunctive relief. Right at this moment, there are no clients entitled to injunctive relief. Is that right? That's true. That's true. And unless the Court finds that the Court abuses discretion in allowing us to add current students. But what you just said is entirely disingenuous, because you do not have any clients who are interested in injunctive relief right now. Or if so, we don't know about them. But certainly there are students that are interested in joining this case, and injunctive relief has always been a goal in this case. So what we're asking for is the opportunity to add current students to seek our class certification and have the ability to seek injunctive relief, which we wouldn't be able to do otherwise. I mean, maybe what we need to do is just vacate that order as moot, and you'll just try again. Because it doesn't make any sense to me for us to be. I think that, I think reversal is proper, because the Court found that we didn't have good cause and that there was prejudice. And without some instruction from the Court with respect to that issue, we might find ourselves here again. But we're reversing it on behalf of non-people. Well, why would, what would be wrong? Let me just understand. Suppose you've got new clients and you filed a different suit. You probably learned a little bit about how things operate. You probably allege it a little differently. And this would not be an adjudication on the merits, would it? How would you be worse off? Well, our particular clients were seeking injunctive relief. They were hoping to have the class certified while they were still students. All right, but they're gone. They're gone. They're finished. So now what? Isn't this sort of like three characters in search of an author? Your Honor, it's our client's position that there was an abuse of discretion. And that it's important to find that for legal purposes and for the practical purposes that we've explained. But I did want to just quickly note that the University has said a lot about whether or not there was a wrestling team or not or whether or not they were allowed back on the team. And I just think it highlights that these were disputed facts on summary judgment. And that there's a sufficient record before the Court to show that plaintiffs met their burden on summary judgment. And the Court can reach a decision on that issue. And in closing, we just ask the Court to reverse the three orders at issue in this appeal and remain consistent with how these cases have been decided within this circuit and those across the country. Because the ability to access the courts is essential to the enforcement scheme of Title IX. And we ask that you ensure that plaintiffs have their day in court. Thank you. Thank you. If it's a matter to start, it is submitted for decision. That concludes the Court's calendar for today. The Court stands adjourned.
judges: Shadur, Schroeder, Berzon